# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Vincent Brown, | Civil Action No. 5:19-cv-1539-RMG |
| Plaintiff, | **ORDER** |
| v. | |
| Lt. Oscar Levels; Sgt. McColough; Asst. Dental A. Ridgeway; Mr. McClurry; Associate Senior Warden Kendall; Captain Loyd; C/O Friarson; C/O Carmen Jackson; Captain McCullough; Mental Health Tech Rosa Privitt; Mental Health Ms. Fox; and Priscilla Muldrow; | |
| Defendants. | |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 182) recommending that the Court grant in part, deny in part Defendants' motion for summary judgment and deny as moot Plaintiff's motions for leave to file reply to answer, motion for reply to answer, motion to specify relief, and motion for disposition of summary judgment. (Dkt. Nos. 114, 141, 144, 169, 171). For the reasons set forth below, the Court adopts the R & R as the Order of the Court.

**I.   Background**

Plaintiff brings this action *pro se* pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was housed at Lee Correctional Institution ("LCI"). Plaintiff brings claims against multiple Defendants employed at LCI for excessive force, deliberate medical indifference and conditions of confinement all in violation of Plaintiff's Eighth Amendment rights. In addition, Plaintiff brings a retaliation claim.

-1-

The factual allegations underlying Plaintiff's claims are that on April 9, 2019, Defendant Levels escorted Plaintiff back to his cell when Plaintiff conveyed he was feeling suicidal and requested mental health services. (Dkt. No. 1 at 13). Plaintiff alleges Defendant Levels handcuffed him and attached a leash and proceeded to yank Plaintiff into the cell. (*Id.*) Plaintiff indicates he panicked and braced himself against the wall outside of his cell. (*Id.*) Plaintiff alleges Defendant Levels overpowered him and rammed Plaintiff's face into a metal window and broke Plaintiff's tooth. (*Id.*) Plaintiff alleges Defendant Levels then threw Plaintiff on the bed, got on top of him, and pulled Plaintiff's arms upward while his hand was handcuffed behind his back in an attempt to break Plaintiff's arm. (*Id.* at 14). After the altercation, Plaintiff alleges that he found the chipped piece of his tooth and kept it as evidence. (*Id.*) Plaintiff alleges he wrote a Request to Staff to Defendant Ridgeway on April 10, 2019, described the altercation, and requested emergency dental care. (*Id.* at 6). Plaintiff indicates that on May 16, his tooth was x-rayed and operated on. (*Id.* at 12).

Plaintiff indicates that on May 7, 2019, various Defendants including Defendant Levels and Defendant Friarson threatened Plaintiff to get Plaintiff to move out of cell number twelve. (Dkt. No. 1-4 at 5). Plaintiff alleges the move was a retaliatory act because Plaintiff filed a lawsuit against Defendant Levels and a police investigation occurred. (Dkt. No. 1 at 12); (Dkt. No. 1-4 at 5). Plaintiff alleges that Defendant Friarson told him that they needed to use the cell for another inmate, but no one was ever put in cell 12. (Dkt. No. 1-4 at 5). Plaintiff alleges he was moved to cell 86 which had live wires hanging from the light fixture and was without working lights and water. (Dkt. No. 1 at 8, 12); (Dkt. No. 1-3 at 2, 4). Plaintiff claims he was denied a shower, hygiene products, and mental health medication for eighteen days. (Dkt. No. 1-3 at 3-4). He alleges he notified Defendant Friarson of the living conditions but no incident

report was written. (*Id.*) Plaintiff alleges that between July 16 through August 2 he was denied a blanket, hygiene products, a shower, and mental health medication on all but on three occasions. (Dkt. No. 1-3 at 7). Plaintiff also alleges that at times he was denied his food. (*Id.*). Plaintiff alleges that since March 2019, Defendants Kendall, McCollough, Friarson, Jackson, Levels, and McClurry denied him of out of cell recreation, exercise, sunlight exposure, and fresh air. (Dkt. No. 1-4 at 2).

Plaintiff makes various allegations related to his mental health and the services provided to him. He alleges that he was escorted from the crisis stabilization unit on July 16, but was still feeling suicidal. (Dkt. No. 1-3 at 6). He alleges he was placed in cell 33 and began hearing voices in his head because he had not received medication. (*Id.*) He alleges Defendant Privett with mental health visited him five days later, but he was not placed on crisis intervention. (*Id.* 6-7). Plaintiff alleges that by July 20, Defendant Jackson took him to the ER to get his wounds cleans after cutting himself. (*Id*. at 5); (Dkt. No. 1-4 at 12). He claims Defendant Jackson never filed an incident report. (*Id.*) Plaintiff claims he was placed on crisis intervention by August 2. (Dkt. No. 180 at 2); (Dkt. No. 1-3 at 3). Plaintiff alleges that on August 13, 2019, he told Defendant McCullough he did not feel good and was feeling suicidal and homicidal. (Dkt. No. 1-3 at 3). He indicates Defendant McCullough gave him a suicide smock and instructed him to go to the suicide cell and mental health would be there shortly. (*Id.*) Plaintiff indicates he complied and was seen by mental health two days later. (*Id.*).

On December 6, 2020, Defendants filed a motion for summary judgment (Dkt. No. 148) to which Plaintiff filed a response in opposition. (Dkt. No. 155). Defendants filed a reply (Dkt. No. 164) and Plaintiff filed a sur-reply. (Dkt. No. 166). On July 20, 2012, the Magistrate Judge issued an R & R recommending that the Court grant the motion as to Plaintiffs' claims for

conditions of confinement and medical indifference and deny the motion as to Plaintiffs' claims for excessive force and retaliation. (Dkt. No. 182). Defendants filed objections to the R & R. (Dkt. No. 191). The matter is ripe for the Court's review.

## II. Legal Standard

### III. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### A. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). In the absence of any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Defendant filed objections and therefore the R & R is reviewed *de novo*.

### IV. Discussion

#### A. Plaintiff's Excessive Force Claim

As the Magistrate Judge ably found, genuine issues of material fact surround Plaintiff's excessive force claim. An inmate's Eighth Amendment claim involves a subjective component and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (internal citations omitted). These requirements are derived from the text of the amendment itself, "absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). The specific showings necessary to

prove each component, however, "var[y] according to the nature of the alleged constitutional violation." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

Plaintiff claims that Defendant Levels exercised excessive force when he rammed Plaintiff's head into a metal window and chipped Plaintiff's tooth. (Dkt. No. 1 at 13). "An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim so long as it rises above the level of de minimus harm." *Hudson*, 503 U.S. at 9-10 (rejecting the argument that "minor" injuries are not actionable.")

In addition, a Plaintiff must also show that Defendant acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). In other words, the "core judicial inquiry" regarding the subjective component of an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. The United States Supreme Court has set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321.

In their motion for summary judgment, Defendants include a report completed by John Lighthill as part of the South Carolina Department of Corrections' ("SCDC") investigation of Plaintiff's excessive force claim. (Dkt. No. 148-3). Lighthill interviewed Defendant Levels about the alleged altercation that occurred between him and Plaintiff on April 9, and Defendant Levels denied the incident. (*Id.* at 2). In a second interview with a different agent, Defendant

Levels did not recall escorting Plaintiff to his cell on April 9 and indicated no Use of Force Report or Incident Report was filed to document what happened. (*Id.*) As part of the investigation, Plaintiff's dental records were obtained which reflect that Plaintiff's tooth was broken, but the records do not inform as to how the tooth was broken. (Dkt. No. 148-4). Lighthill interviewed Plaintiff and asked to see the piece of tooth that was allegedly chipped as a result of the altercation. (Dkt. No. 148-3 at 2). Lighthill indicated that Plaintiff produced what appeared to be a piece of porcelain from a sink. Plaintiff indicated he would keep it safe with him, placed it back into a piece of plastic, and then placed it in his rectal area. (*Id.*). The report reviewed the LCI RHU video footage on June 20, 2019 and did not find any footage of the incident. (*Id.*).[1] The report concluded there was no evidence to support Plaintiff's claim. (*Id.* at 3).

In his response to Defendants' motion for summary judgment, Plaintiff reiterates the allegations against Defendant Levels. (Dkt. No. 155 at 3). The day after the alleged incident, he filed a Request to Staff Member, requesting emergency treatment for his broken tooth. (Dkt. No. 155-1 at 7). He also inquired why the purported piece of chipped tooth was not tested during the investigation. (*Id.* at 4). He attaches copies of his LCI records ranging in date from April 10 to September 25, 2019, where he stated levels or an officer assaulted him and broke his tooth. (Dkt. No. 155-1 at 6-9, 14, 37, 38, 40).

In the objections to the R & R, Defendants argue that summary judgment should be granted as to Plaintiff's excessive force claim. Defendants look to the Magistrate Judge's later finding regarding Plaintiff's medical indifference claim that "Plaintiff has not offered any evidence that his broken tooth or vision issues constituted an objectively serious medical need."

---

[1] Defendants notified the Court that SCDC's video recording system overwrites older recording data with current video footage. Video recording data is usually maintained for a minimum of thirty days and then overwritten with current footage. (Dkt. No. 176).

(Dkt. No. 182 at 19). Defendants argue this finding is inconsistent with the Magistrate Judge's earlier statement regarding Plaintiff's excessive force claim that "although a broken tooth may not be considered a sufficiently serious injury, the absence of a significant injury alone is not dispositive of a claim of excessive force. (Dkt. No. 182 at 10). Defendants and the Magistrate Judge cites *Wilkins v. Gaddy*, 559 U.S. 34 (2010), which articulates a principle set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). *Hudson* held that significant injury is not a threshold requirement for stating an excessive force claim. *Id*. Hudson also explained that a court should determine excessive force claims based on the nature of the force rather than the extent of the injury. *Id.* The Court further stated that "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency are always violated . . . whether or not significant injury is evident." *Hudson*, 503 at 9. These principles indicate that an excessive force claim is driven by an inquiry into the nature of the force and a Plaintiff need not suffer a significant injury as a requirement to bring such a claim. Thus, Plaintiff's claim that Defendant Levels exercised excessive force by ramming Plaintiff's head into a metal window is not precluded by the Magistrate Judge's finding that Plaintiff failed to establish evidence to show a chipped tooth is a serious injury.

Defendants object to the R & R arguing there is no issue of material fact as to Plaintiff's excessive force claim because SCDC completed an investigation of this incident and found no evidence to support Plaintiff's claim. (Dkt. No. 191 2-3). Yet, the absence of a videotape of the incident and the fact Defendants did not prepare an incident report is not dispositve on the issue of whether Levels exercised excessive force against Plaintiff. Upon a careful review of the record and viewing it in a light most favorable to Plaintiff, the Court finds that the Magistrate Judge correctly concluded the contradictory statements between Plaintiff and Defendant Levels

create a genuine issue of material fact as to whether Defendant Levels exercised excessive force on Plaintiff. (Dkt. No. 182 at 8-11). Defendants' motion for summary judgment is denied as to Plaintiff's excessive force claim against Defendant Levels. The motion for summary judgment is granted as to all other Defendants.

B. Medical Indifference

Plaintiff alleges Defendants violated his constitutional rights when they denied him medical treatment for his vision issues, broken teeth, and mental health issues. (Dkt. No. 1). The Magistrate Judge comprehensively analyzed Plaintiff's medical indifference claim and concluded no issue of material fact exists as to this claim. (Dkt. No. 182 at 10).

Claims that prison officials failed to provide adequate medical care to an inmate also sound in the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). There is a subjective and an objective component to showing a violation of the right. A plaintiff must demonstrate the "officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish the objective component, a "serious . . . medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). A plaintiff must also demonstrate the subjective component of deliberate indifference claim. An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate." *Farmer*, 511 U.S. at 837. "Deliberate indifference is a very high standard-a showing of mere negligence will not meet it." *Iko*, 535 F.2d at 241.

In this case, Plaintiff's dental records indicate he was seen by the dental department on May 16, x-rays were taken, and the broken tooth was repaired. (Dkt. No. 148-4); (Dkt. No. 180 at 25). Plaintiff's medical records indicate he was seen 77 times from March 1 to August 13 by medical, dental, and mental health professionals while housed at LCI. (Dkt. No. 148-5); (Dkt. No. 180). Plaintiff's medical records reflect that Plaintiff received treatment and assessment for mental health issues which included hearing voices, self-mutilation, covering himself in feces, and eating feces. (Dkt. No. 180).

Upon a careful review of the record and viewing it in a light most favorable to the Plaintiff, the Court finds that the Magistrate Judge comprehensively analyzed the evidence and determined that Plaintiff was seen numerous times by medical staff to address his suicidal and homicidal thoughts and cutting to conclude that Plaintiff failed to demonstrate Defendants were deliberately indifferent to his serious medical needs. (Dkt. No. 182 at 12-19). To the contrary, Plaintiff's records indicate he received extensive treatment for his mental health issues. As the Magistrate Judge noted, although Plaintiff argues he should have received additional and different treatment, a disagreement about the proper treatment for a medical condition does not in and of itself state a constitutional violation. *Brown v. Thompson*, 868 F. Supp. 326, 331 (S.D. Ga. 1994) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Defendants' motion for summary judgment as to Plaintiff's medical indifference claim is granted.

C. Conditions of Confinement

Plaintiff argues Defendants violated his constitutional rights when he was placed in a cell with live wires hanging out of the light, without a working toilet, lights, or cold water, and part of the floor missing. (Dkt. No. 1-3 at 2). Plaintiff also argues Defendants violated his constitutional rights because he was denied meals. (Dkt. No. 1-3 at 2). Defendants argue that

Plaintiffs' allegations are insufficient to establish a cruel and unusual punishment claim based on conditions of confinement. (Dkt. No. 148-1 at 8). Further, Defendants argue that Plaintiff cannot produce evidence of a serious or significant injury that resulted from the alleged conditions. (*Id.*) In response to Defendant's motion for summary judgment, Plaintiff indicates that because of the conditions of confinement his muscles have atrophied and his eyesight has blurred, requiring him to wear glasses. (Dkt. No. 155 at 8). Plaintiff reiterates that the cell he was placed in had broken lights and a broken toilet. (*Id.* at 11). He argues it is unconstitutional to be deprived of recreation for long periods of time, and to be isolated in a cell for 24 hours per day. (*Id.* at 12-13).

"To demonstrate that conditions of confinement constitute cruel and unusual punishment, [ an inmate] must (1) establish that prison officials acted with 'deliberate indifference' and (2) prove extreme deprivations of basic human needs or 'serious or significant' pain or injury." *Smith v. Ozmint*, 578 F.3d 246, 255 (4th Cir. 2009). To demonstrate the conditions deprived him of a basic human need, a plaintiff must allege officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." F*armer*, 511 U.S. at 832.

Upon a careful review of the record, the Court finds that the Magistrate Judge correctly concluded that there is no issue of material fact that Plaintiff's conditions of confinement claim fails to rise to the level of a constitutional violation. (Dkt. No. 182 at 21). The Magistrate Judge found that Plaintiff failed to produce any evidence that he was isolated in his cell for 24 hours, nor had he shown that his muscles atrophied due to a lack of exercise, that his vision was negatively impacted by spending time in a cell without working lights. (*Id*. at 21-22). In addition, the Magistrate Judge concluded that Plaintiff had not shown other evidence of a serious

or significant injury from the alleged deprivations. *Strickler v. Waters*, 989 F.2d 1375, 1380-81 (4th Cir. 1993) (explaining that in order for prison conditions to rise to the level of unconstitutional punishment there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition). Defendants' motion for summary judgment as to Plaintiff's conditions of confinement claim is granted.

### D. Retaliation

Regarding Plaintiff's retaliation claim, the Magistrate Judge ably determined Plaintiff states a plausible retaliation claim.[2] To plausibly state a retaliation § 1983 claim, a Plaintiff must establish that (1) his speech was protected, (2) "the alleged retaliatory action adversely affected his protected speech," and (3) a causal relationship between the speech and the retaliation. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015). In this case, Plaintiff alleges Defendants Levels and Friarson threatened him to get him to move from cell 12 which was in working order, to cell number 86. (Dkt. No. 1 at 12); (Dkt. No. 1-3 at 4); (Dkt. No. 1-4 at 5). Plaintiff alleges that Defendant Friarson told him that they needed to use the cell for another inmate, but no one was ever put in cell 12. (Dkt. No. 1-4 at 5). Plaintiff indicates that he later learned he was moved in retaliation for filing a lawsuit and police investigation against Defendant Levels and other LCI officers. (Dkt. No. 1 at 12); (Dkt. No. 1-3 at 4); (Dkt. No. 1-4 at 5).

Defendants object to the R & R on the ground that the retaliation claim must be dismissed because it is premised on the same cell conditions that were rejected by the Magistrate Judge in Plaintiff's condition of confinement claim. (Dkt. No. 191 at 4). Defendants' objection

---

[2] In a footnote, the Magistrate Judge notes that Defendants did not move for summary judgment on Plaintiff's retaliation claim. (Dkt. No. 182 at 22, fn 2). In the objections to the R & R, Defendants argue they moved for summary judgment as to "all causes of action" raised in Plaintiff's complaint. (Dkt. No. 148-1 at 1); (Dkt. No. 191 at 4). Upon a review of Defendants' motion for summary judgment, Defendants make a general statement that all of Plaintiff's claims should be dismissed on summary judgment but include no discussion or argument as to why Plaintiff's retaliation claim should be dismissed on summary judgment. (Dkt. No. 148-1 at 1).

is without merit because the actual conditions of Plaintiff's cell are not relevant to Plaintiff's retaliation claim. Plaintiff's retaliation claim is premised on his initiating a lawsuit and investigation against Defendants, which is protected activity under the First Amendment. *See Booker v. S.C. Dep't of Corr's.*, 855 F.3d 533, 544 (4th Cir. 2017) ("[T]his court has long held that prison officials may not retaliate against prisoners for exercising their right to access the courts . . . which is a component of the right to petition for redress of grievances."). Upon a review of the record, the Court the Court finds that Plaintiff plausibly states a claim for retaliation against Defendants Friarson and Levels. Defendants' motion for summary judgment as to Plaintiff's retaliation claim is denied.

In summary, Defendants' motion for summary judgment is granted in part, denied in part. (Dkt. No. 148). The motion is granted as to Plaintiff's claims for deliberate indifference and conditions of confinement. The motion is denied as to Plaintiff's claim for excessive force against Defendant Levels and Plaintiff's retaliation claim against Defendants Friarson and Levels.

### IV.     Conclusion

For the reasons set forth above, the Court **ADOPTS** the R & R as the Order of the Court. (Dkt. No. 182). Defendant's motion for summary judgment (Dkt. No. 148) is **GRANTED IN PART, DENIED IN PART**. Plaintiff's remaining motions are **DENIED AS MOOT.** (Dkt. Nos. 114, 141, 169, 171).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard M. Gergel
United States District Judge

September 18, 2020
Charleston, South Carolina